UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

NATIONSTAR MORTGAGE LLC,

                      Plaintiff,

v.

                                                                        17-CV-508V(Sr)

FEIN, SUCH & CRANE LLP,

                      Defendant.

### REPORT, RECOMMENDATION, AND ORDER

Plaintiff Nationstar Mortgage LLC ("Nationstar") commenced this action against defendant law firm Fein Such and Crane LLP ("Fein Such") alleging breach of contract and legal malpractice in Fein Such's handling of a mortgage loan foreclosure action. Dkt No. 1. This case was referred to the undersigned by the Hon. Lawrence J. Vilardo, pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions. Dkt. No. 29. Currently before the Court is Fein Such's Motion to Dismiss the Complaint. Dkt. No. 24. For the following reasons, it is recommended that the motion be DENIED.

### BACKGROUND

The following facts, which are presumed to be true for the purposes of defendant's motion to dismiss, are taken from the complaint. Dkt. No. 1. On July 9, 2004,[1] Joseph Lissandrello borrowed $425,000 from Washington Mutual Bank, FA

---

[1] The Complaint sets forth the borrowing date at July 9, 2014, which this Court presumes to be a typographical error, as it would post-date the commencement of the foreclosure actions.

1

("Washington Bank") using real property located at 2102 66th Street in Brooklyn, New York ("Lissandrello property") as security for the loan ("Lissandrello loan"). Dkt. No. 1, pp. 2-3. This mortgage was recorded with the Offices of the City Register of the City of New York. Dkt. No. 1, p. 3. Mr. Lissandrello defaulted on the loan, causing Washington Bank to commence a foreclosure action against him on October 23, 2007 in Kings County Supreme Court ("first foreclosure action") using Fein Such as counsel. Dkt. No. 1, p. 3. Mr. Lissandrello answered the complaint, but the case apparently languished for many years. Dkt. No. 1, p. 3.

On October 1, 2011, during the pendency of this first foreclosure action, the "servicing" of the Lissandrello loan transferred to JP Morgan Chase Bank, National Association ("JP Morgan"). Dkt. No. 1, p. 3. According to the complaint, "JP Morgan retained Fein Such to provide legal services in connection with the foreclosure of mortgage loans in New York, including the first foreclosure action" pursuant to a written agreement in which Fein Such "specifically represented to JP Morgan that Fein Such had expertise in conducting mortgage foreclosure actions and that it had the necessary expertise to perform services required under the JP Morgan Agreement and agreed to exercise due diligence and reasonable care in performing legal services . . . ." Dkt. No. 1, p. 3. "Upon information and belief, JPMorgan relied on Fein Such's professional and independent judgment and discretion in prosecuting this foreclosure action." Dkt. No. 1, p. 3.

On August 6, 2013, the Kings County Supreme Court conducted a status conference in the first foreclosure action and directed Washington Mutual to file a note of issue or move for an order of reference within ninety days. Dkt. No. 1, p. 4. Fein Such failed to do either and the court dismissed the action on February 27, 2014. Dkt. No. 1, p. 4. Fein Such did not move to restore the first foreclosure action and the statute of limitations to sue for the entire loan amount expired on October 23, 2013, six years after Washington Mutual accelerated the payments due on the loan. Dkt. No. 1, p. 4.

On May 7, 2014, Fein Such, on behalf of JP Morgan, commenced a second foreclosure action against Mr. Lissandrello, in Kings County Court ("second foreclosure action"). Mr. Lissandrello failed to timely appear or answer the complaint, thereby waiving the statute of limitations defense. Dkt. No. 1, p. 4. Shortly thereafter, on July 1, 2014, plaintiff Nationstar began servicing the Lissandrello loan. Dkt. No. 1, p. 5. Nationstar then retained Fein Such to continue the second foreclosure action. Dkt. No. 1, p. 5. Under the written agreement between the two parties, Fein Such agreed to exercise due diligence and reasonable care, and to indemnify Nationstar against any losses suffered from its negligence or breach. Dkt. No. 1, p. 5. Like its predecessor, Nationstar "relied on Fein Such's professional and independent judgment and discretion in prosecuting foreclosure actions." Dkt. No. 1, p. 5.

At a status conference in the second foreclosure action on March 12, 2015, Fein Such stipulated to Mr. Lissandrello interposing an answer to the complaint by the end of the month. Dkt. No. 1, p. 5. Mr. Lissandrello filed and served

3

an answer within the stipulated time frame raising the statute of limitations as an affirmative defense, effectively defeating the second foreclosure action. Dkt. No. 1, p. 4. Faced with this reality, Nationstar retained another law firm, Ackerman LLP, to negotiate a settlement under which Nationstar agreed to sell the note and Lissandrello loan to a third party, 2012 66th Street Notebuyer, LLC ("Notebuyer, LLC"). Dkt. No. 1, p. 5.

Upon information and belief, the Lissandrello property was worth about $950,000 on the date of sale, February 11, 2016. Dkt. No. 1, p. 5. Nationstar agreed to sell the loan to Notebuyer, LLC at a "discount," an "amount far less than the unpaid principal balance of the loan or the value of the subject property," "because the second foreclosure action was barred by the applicable statute of limitations." Dkt. No. 1, p. 6.

Regarding ownership of the loan, plaintiff alleges that JP Morgan serviced the Lissandrello loan on behalf of the "previous loan owner," an entity which owned the loan on November 4, 2013, and sold the loan to NRZ Mortgage Holdings, LLC ("NRZ"). Dkt. No. 1, p. 6. Upon information and belief, the previous loan owner "transferred any and all claims related to the loan, including the right to sue Fein Such for malpractice in connection with the foreclosure of the loan." Dkt. No. 1, p. 6. On April 22, 2014, NRZ "deposited" the loan into the NRZ Pass-Through Trust ("NRZ Trust"), and pursuant to an agreement dated May 28, 2014, assigned "all of its rights and obligations" to the NRZ Trust including "the right to sue Fein Such for malpractice in connection with the foreclosure of the loan." Dkt. No. 1, p. 6.

The NRZ Trust sold the loan to the Pretium Mortgage Credit Partners I Loan Acquisition, LP ("Pretium") on March 27, 2015, along with "the related servicing rights" including "the right to sue Fein Such for malpractice in connection with the foreclosure of the [Lissandrello] loan." Dkt. No. 1, p. 6. On September 17, 2015, Pretium and Nationstar entered into a servicing agreement pursuant to which Pretium authorized Nationstar "to do any and all things in connection with" servicing and administering the Lissandrello loan, "including [pursuing] the right to sue Fein Such for malpractice in connection with the foreclosure of the loan." Dkt. No. 1, p. 6.

Plaintiff commenced this action in the Northern District of Texas on November 4, 2016, alleging professional negligence and legal malpractice as well as breach of contract. Dkt. No. 1. Upon defendant's motion (Dkt. No. 12), the case was transferred to the Western District of New York on June 1, 2017 (Dkt. No. 18). Defendant moved to dismiss the complaint on July 30, 2017 (Dkt. No. 24) after which time Judge Vilardo referred the case to the undersigned (Dkt. No. 29).

## DISCUSSION AND ANALYSIS

**Dismissal Standard**

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

5

misconduct alleged." *Iqbal*, 556 U.S. at 678.  Application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* 556 U.S. at 679.

In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration "to facts stated on the face of the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999); *see also Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).

**Legal Malpractice**

To prevail on a claim of legal malpractice under New York law, a plaintiff must establish four elements: (1) an attorney-client relationship; (2) attorney negligence; (3) that is the proximate cause of a loss; and (4) actual damages.  *Stonewell Corp. v. Conestoga Title Ins. Co.*, 678 F. Supp. 2d 203, 208-09 (S.D.N.Y. 2010); *Allianz Ins. Co. v. Lerner,* 416 F.3d 109, 118 (2d Cir. 2005); *Estate of Re v. Kornstein Veisz & Wexler,* 958 F. Supp. 907, 920 (S.D.N.Y. 1997).  To defeat such a claim, the defendant must establish that the plaintiff cannot prove at least one of these essential elements. *See Rubens v. Mason,* 527 F.3d 252, 255 (2d Cir. 2008); *Carney v. Philippone,* 332 F.3d 163, 167 (2d Cir. 2003).

With regard to negligence, the plaintiff must show that the defendant's conduct "fell below the ordinary and reasonable skill and knowledge commonly possessed by a member of his profession." *Achtman v. Kirby, McInerney & Squire,*

*LLP,* 464 F.3d 328, 337 (2d Cir. 2006) (quoting *Grago v. Robertson,* 49 A.D.2d 645 (3d Dep't 1975)).  By way of example, an attorney may be liable for legal malpractice if he exhibits "ignorance of the rules of practice, [or] fail[s] to comply with conditions precedent to suit, or . . . neglect[s] to prosecute or defend an action."  *Hatfield v. Herz,* 109 F. Supp. 2d 174, 180 (S.D.N.Y. 2000) (quoting *Bernstein v. Oppenheim & Co.*, 160 A.D.2d 428 (1st Dep't 1990)).  On the other hand, "[a]llegations that amount to nothing more than a 'dissatisfaction with strategic choices' will not support a malpractice claim as a matter of law."  *Stonewell Corp.*, 678 F. Supp. 2d at 208-09 (quoting *Bernstein,* 160 A.D.2d at 429); *see also Rosner v. Paley,* 65 N.Y.2d 736 (1985) (holding that a complaint that alleges nothing "more than an error of judgment" or "selection of one among several reasonable courses of action" does not state a claim of legal malpractice); *Nobile v. Schwartz,* 265 F. Supp. 2d 282, 288 (S.D.N.Y. 2003) (noting that a plaintiff must show that the attorney "failed to exercise that degree of care, skill and diligence commonly possessed and exercised by a member of the legal community").

       To establish proximate cause in a legal malpractice claim, the plaintiff must show that "but for the attorney's negligence what would have been a favorable outcome was an unfavorable outcome."  *Stonewell*, 678 F. Supp. 2d at 209 (quoting *Zarin v. Reid & Priest,* 184 A.D.2d 385 (1st Dep't 1992); *see also Weil, Gotshal & Manges, LLP v. Fashion Boutique of Short Hills, Inc.,* 10 A.D.3d 267 (1st Dep't 2004) (stating that "to establish the elements of proximate cause and actual damages, . . . the client must meet a 'case within the case' requirement, demonstrating that 'but for' the attorney's conduct, the client would have prevailed in the underlying matter or would not have sustained any ascertainable damages").

In its motion to dismiss, defendant divides — somewhat artificially in this Court's view — Fein Such's legal representation between the first foreclosure action on one hand and the second foreclosure action on the other. With respect to the first foreclosure action, defendant argues that Nationstar "had no involvement" in it, as the case was dismissed on February 27, 2014, and Nationstar did not begin servicing the loan (then owned by Pretium) until almost 5 months later, on July 1, 2014. Dkt. No. 24-1, p. 13. Defendant contends that Nationstar and Pretium lacked privity with Fein Such with respect to the services rendered during the first foreclosure action. Dkt. No. 24-1, p. 13. Specifically, defendant contends that NRZ and the NRZ Trust did not assign to Pretium its right to sue Fein Such for legal malpractice regarding its prior handling of the Lissandrello loan; and therefore Nationstar, as Pretium's loan servicer, cannot assert a legal malpractice claim relating to Fein Such's representation during that time. Regarding the second foreclosure action, defendant argues that plaintiff cannot show that "but for" Fein Such stipulating to Mr. Lissandrello interposing a late answer (and belatedly asserting a successful statute of limitations defense), the case would have succeeded.

*Nationstar's Right to Assert Legal Malpractice Against Fein Such*

Regarding defendant's argument that Nationstar has no right to assert legal malpractice based on Fein Such's representation during the first foreclosure action, this Court finds that plaintiff has alleged sufficient facts to show that it was assigned that right. "With limited exceptions . . . , New York permits the assignment of [a] tort claim," such as legal malpractice. *Int'l Design Concepts, LLC v. Saks Inc.,* 486 F. Supp. 2d 229, 236 (S.D.N.Y. 2007) (citing *Banque Arabe et Internationale*

8

*D'Investissement v. Maryland Nat. Bank*, 57 F.3d 146, 151 (2d Cir. 1995) (called into doubt on other grounds by *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 103 (2d Cir. 2001)). The "assignment of all contractual rights does not necessarily include an assignment of all tort claims; rather, whether tort claims are encompassed within the assignment is a matter of contract interpretation." *Int'l Design Concepts*, 486 F. Supp. 2d at 236; *Royal Mortgage Corp. v. F.D.I.C.,* 20 F. Supp. 2d 664, 668 (S.D.N.Y.1998). No specific boilerplate language is necessary to transfer a tort cause of action; to the contrary, "[a]ny act or words are sufficient which show an intention of transferring the chose in action to the assignee . . . ." *See Miller v. Wells Fargo Bank Int'l Corp.,* 540 F.2d 548, 557 (2d Cir. 1976) (internal citations and quotations omitted). In interpreting whether one party has transferred to another party his or her right to assert a tort, "[t]he words of the assignment are of paramount importance." *Int'l Design Concepts*, 486 F. Supp. 2d at 236.

Taking all of the allegations in the complaint as true, as it must on a motion to dismiss, this Court finds that plaintiff has alleged sufficient facts to show that each time the Lissandrello loan was transferred, the prior owner assigned to the new owner the right to sue Fine Such for malpractice in connection with the loan's foreclosure. Specifically, in its complaint, plaintiff details the sale and/or transfer of the Lissandrello loan from the previous loan owner to NRZ, from NRZ to the NRZ Trust, and finally, from the NRZ Trust to Pretium. Dkt. No. 1, p. 6. With respect to each transfer, plaintiff alleges that each sale or transfer included "the right to sue Fein Such for malpractice in connection with the foreclosure of the loan." Dkt. No. 1, ¶¶ 22-24.

9

The fact that plaintiff makes some of its assertions regarding the sale and transfer of the loan based "on information and belief" is not fatal to its claim in the context of defendant's Rule 12(b)(6) motion. *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (stating that consistent with *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2013), "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," but mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action will not do[;]" rather, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *i.e.,* enough to make the claim "plausible," *id.* at 570). In its papers, plaintiff states that it "bases its reasonable belief that NRZ received the right to sue for Fein Such's malpractice because the agreement transferring the loan to NRZ likely contains language similar to that in the agreements transferring the loan to the NRZ Trust and Pretium." Dkt. No. 27, p. 6 fn. 1. This Court notes that the contracts governing the sales and transfers of the Lissandrello loan are not before it and defendant's motion is not one for judgment on the pleadings. Fed. R. Civ. Pro. 12(c). As such, whether plaintiff can ultimately prove that Pretium was rightfully assigned the right to sue Fein Such is a matter to be resolved at a later date.

Defendant also makes the argument, without citing any caselaw, that Nationstar has no right to sue Fein Such because Pretium acquired the Lissandrello loan after it "had been impaired," specifically, that "the lien and debt were already unenforceable, due to the expiration of the statute of limitations." Dkt. No. 31, p. 14. Defendant argues that "[t]his is like saying that cars which are damaged in a collision

10

are sold along with the right to sue the other driver who caused the collision." Dkt. No. 31, p. 14.

This argument is unavailing for two reasons. First, parties often sell assets such as loans, real estate, or businesses along with the corresponding legal right to commence, sustain and/or defend legal actions against third parties on behalf of the transferred asset. By way of example, a party may purchase a rental property with preexisting tenants and purchase, along with the property, the right to sue for any damages caused to the property by the tenants during their tenancy. As long as the seller expresses an intent to assign those ancillary or corresponding rights in a contract or other agreement, parties to a transfer of a damaged or encumbered asset are not foreclosed from vindicating past wrongs committed against that asset. Secondly, this Court notes that it was Fein Such's own alleged legal malpractice — specifically, its failure to file a note of issue as directed by the Kings County Court — that rendered the note "unenforceable." Dkt. No. 31, p. 14. Fein Such thereafter commenced a second foreclosure action, which was time-barred at its inception, and allegedly facilitated Mr. Lissandrello in asserting a successful statute of limitations defense. As the attorneys assigned to prosecute the Lissandrello foreclosure, Fein Such was in a far better position than Nationstar to know that the loan could not be enforced, but Fein Such apparently did not. It hardly seems just to allow defendant to use its prior legal incompetence as a shield against later acts of alleged malpractice. Accordingly, defendant's motion to dismiss the legal malpractice claim on the basis that Nationstar had no privity should be DENIED.

*Proximate Cause of Nationstar's Damages*

This Court is unpersuaded by defendant's argument that Fein Such's alleged conduct in stipulating to Mr. Lissandrello interposing a late answer in the second foreclosure action, and thereby allowing him to raise a successful statute of limitations defense, was not the proximate cause of Nationstar's damages. Dkt. No. 31, p. 14. Specifically, defendant argues that the second foreclosure proceeding "was time barred before it was commenced" and that Mr. Lissandrello could have belatedly asserted the meritorious defense even if Fein Such had not stipulated to him filing a late answer. Dkt. No. 31, p. 15.

For the reasons previously stated, this Court does not adopt defendant's segmented and self-serving view of its role in prosecuting the Lissandrello loan. According to the complaint, Fein Such was retained shortly after Mr. Lissandrello defaulted on the loan. The law firm commenced the case but allowed it to languish and failed to file a note of issue as directed by the Kings County Court, causing the first foreclosure action to be dismissed. Fein Such also: failed to reopen the case, even though the statute of limitations had elapsed; commenced the second foreclosure action even though it was time-barred; and finally, stipulated to Mr. Lissandrello filing a late answer even though he had effectively waived the statute of limitations defense by failing to answer in a timely manner. That Mr. Lissandrello could have petitioned the Kings County Court to interpose an untimely answer without Fein Such's consent does not erase the law firm's numerous prior legal failures. The fact remains that it was Fein Such that allowed the statute of limitations to elapse on its watch. That defendant's more egregious errors early in the case make its later lapses appear less damaging

does not change the fact that according to the complaint, Fein Such is singlehandedly responsible for rendering the Lissandrello loan "unenforceable." For these reasons, it is recommended that the motion to dismiss the legal malpractice claim be DENIED.

**Breach of Contract**

Defendant contends that plaintiff's breach of contract claim must be dismissed because it is based on the same operative facts and damages as its legal malpractice claim. Dkt. No. 24-1, p. 9. As a general rule under New York law, a court may dismiss as duplicative a breach of contract claim that is based on the same underlying facts as an accompanying tort claim. *See, e.g., ATC Healthcare Inc. v. Goldstein, Golub & Kessler LLP,* 28 Misc. 3d 1237(A), 958 N.Y.S.2d 59 (Sup.Ct. 2009) (dismissing plaintiff's breach of contract and negligence claims as "redundant" because they "are based on the same actions of misconduct that give rise to the accounting malpractice claim"); *RGH Liquidating Trust v. Deloitte & Touche LLP,* 47 A.D.3d 516 (1st Dep't 2008) (holding that "plaintiff's fraud claims were properly dismissed as duplicative of its breach of contract claim, since they are based on alleged fraudulent misrepresentations related to defendants' obligations under their agreements . . . to conduct audits of financial statements with reasonable care, and allege no misrepresentations collateral or extraneous to the agreements").

On the other hand, when a tort claim (such as a legal malpractice claim) arises from a defendant's alleged violation of an independent fiduciary duty, the tort claim may be construed as being independent of an accompanying breach of contract claim, even when the two claims are based on the same underlying facts:

> Conduct constituting a breach of contract nevertheless is actionable in tort if a legal duty independent of the contract itself has been violated. Such a duty may be independent of a contract and yet emerge from a relationship of trust and confidence created by a contract, as in the case of a lawyer and client.  In other words[,] the same conduct which may constitute the breach of a contractual obligation may also constitute the breach of a duty arising out of the relationship created by contract but which is independent of the contract itself.

*Bullmore v. Banc of Am. Sec. LLC,* 485 F. Supp. 2d 464, 469-70 (S.D.N.Y. 2007) (internal quotations omitted); *see In re MF Glob. Inc.*, 496 B.R. 315, 323 (S.D.N.Y. 2013) (reasoning that "[w]hile the professional and fiduciary duty that PwC owed MFGI was created by the January 18, 2010 Letter and the June 24, 2010 Letter, the duty exists independent of the contract and breach of that duty can serve as the independent basis for the assertion of tort claims"); *Sommer v. Federal Signal Corp.,* 79 N.Y.2d 540, 551-52 (1992) (holding that "a contracting party may be charged with a separate tort . . . arising from a breach of a duty distinct from, or in addition to, the breach of contract . . . [and a] legal duty independent of contractual obligations may be imposed by law as an incident to the parties' relationship"); *Berg v. Eisner LLP*, 94 A.D.3d 496 (1st Dep't 2012) (stating that "the scope of defendants' duty to plaintiff [given their accountant-client relationship] is no narrower than the terms of the parties' agreement, and may be broader, based on professional accounting standards").

14

A tort claim is less likely to be deemed duplicative of a contract claim where, as here, a defendant with a fiduciary duty exercises broad discretion in its handling of a client's matters.  *Bullmore*, 485 F. Supp. 2d at 471 (recognizing that the defendant-investor had "broad discretion" to manage the plaintiff-client's investments and therefore, plaintiff's allegations of fraud and breach of fiduciary duty were not duplicative of his breach of contract claims); *see also Moses v. Martin,* 360 F. Supp. 2d 533, 544 (S.D.N.Y. 2004) (holding that the plaintiff's fraud claim was not duplicative of his contract claim where defendant had broad discretion to negotiate deals on plaintiff's behalf and plaintiff relied on defendant's advice in structuring deals based on defendant's superior knowledge).

While this presents a close question, this Court finds that plaintiff has alleged sufficient facts regarding its reliance on Fein Such beyond what was contained in the contract for its legal malpractice and breach of contract claims to stand independently of one another.  Specifically, plaintiff alleges that Fein Such specifically represented to its predecessor in interest, JP Morgan, that Fein Such had "expertise" in conducting mortgage foreclosure actions and that JP Morgan "relied on Fein Such's professional and independent judgment and discretion in prosecuting this foreclosure action."  Dkt. No. 1, ¶ 11.  With respect to its relationship with Fein Such, Nationstar alleges it also "relied on Fein Such's professional and independent judgment and discretion in prosecuting foreclosure actions."  Dkt. No. 1, ¶ 18.  Accordingly, this Court finds that plaintiff's breach of contract claim is not duplicative of its legal malpractice claim and defendant's motion to dismiss on this basis should be denied.

**CONCLUSION**

For the foregoing reasons, it is RECOMMENDED that defendant's motion to dismiss the amended complaint (Dkt. No. 24) be DENIED.

Therefore, it is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation, and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b)(2) and Local Rule 72.  **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.**  *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72 of the Local Rules for the Western District of New York, "written objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection, and shall be supported by legal authority."  **Failure to comply with the provisions of Local Rule 72 may result in the District Judge's refusal to consider the objection.**

16

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance.  *See, e.g., Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).  In accordance with the requirements set forth in Local Rule 72, "[a]ny party filing objections to a Magistrate Judge's order or recommended disposition must include with the objections to the District Judge a written statement either certifying that the objections do not raise new legal/factual arguments or identifying the new arguments and explaining why they were not raised to the Magistrate Judge."

**SO ORDERED.**

DATED:     Buffalo, New York
           August 21, 2018

                              *s/ H. Kenneth Schroeder, Jr.*
                              **H. KENNETH SCHROEDER, JR.**
                              **United States Magistrate Judge**